1
ROBERT WAGGENER - SBN: 118450
LAW OFFICE OF ROBERT WAGGENER
2
214 Duboce Avenue
San Francisco, California 94103
3
Phone:        (415) 431-4500
Fax:          (415) 255-8631
4
E-Mail:       rwlaw@mindspring.com

5
MARCIA ANN MORRISSEY- SBN: 66921
LAW OFFICE OF MARCIA ANN MORRISSEY
6
11400 W. Olympic Blvd., STE 1500
LOS ANGELES, CA 90064
7
Phone:        (310) 399-3259
Fax:          (310) 392-9029
8
E-Mail:       morrisseyma@aol.com

9
Attorneys for Defendant RUSSELL TAYLOR OTT

10

11                          **UNITED STATES DISTRICT COURT**

12                          **NORTHERN DISTRICT OF CALIFORNIA**

13

14  UNITED STATES OF AMERICA,                No**. CR 17 533 EMC**

15                              Plaintiff,    **REPLY TO UNITED STATES RESPONSE
                                              TO DEFENSE LETTER REQUEST FOR
16           v.                               CAST EXPERT DISCOVERY**

17  RUSSELL TAYLOR OTT,                       Date:   December 15, 2020
                                              Time:   9:00 a.m.
18                              Defendant.    Crtrm:  Magistrate Judge Beeler
    _____/
19

20  **TO:     THE UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF
21           CALIFORNIA; ASSISTANT UNITED STATES ATTORNEYS KEVIN BARRY,
             AJAY KRISHNAMURTHY, AND LINA PENG; AND TO THE CLERK OF THE
22           ABOVE-ENTITLED COURT:**

23
          The defendants hereby reply to the United States' Response to Joint Defense Letter
24
Request for CAST Expert Discovery. ( Dkt. No. 1356) A separate reply will be filed by counsel
25
for defendant Brian Wendt.
26
          The government's promised supplemental disclosure by Agent Sparano after the last
27
discovery hearing in August is worthy of some discussion.
28

**REPLY TO UNITED STATES RESPONSE TO DEFENSE
LETTER REQUEST FOR CAST EXPERT DISCOVERY**

1   Over numerous paragraphs Agent Sparano discusses various means of establishing a

2   footprint (potential coverage area) of a cell tower. These methods include a drive test, an

3   engineering phone, and cell tower surveys, none of which were actually employed in this case.

4   Agent Sparano goes on to say that she conducted historical cellular analysis in accordance

5   with the methods laid out in her disclosure, but she really did not use any of the methods she

6   describes - other than looking at the CDRs and the cell tower locations.

7   Agent Sparano also talks about "known facts being considered" in compiling results

8   and/or conclusions in an official report and/or presentation for use by investigators or at trial.

9   (Paragraph 6) However, there is no mention of any "known facts" being utilized, other than

10   CDRs and cell tower sites, in what is labeled as her disclosure.

11   The relative hollowness of Agent Sparano's disclosure in light the Court's FRE

12   702/Daubert gate-keeping function in a "historical" case where locations are determined years

13   after an alleged event or events is why the defense is bringing this motion before the Court.

14   The government claims that "[c]ell site analysis is a well-established and accepted law

15   enforcement tool, and agents from the FBI's Cellular Analysis Survey Team (CAST) have

16   routinely been recognized as qualified experts in this field—including in this district."  The

17   government seeks support for this position by citation to *United States v. Hill*, 818 F.3d 289 (7th

18   Cir. 2016). The government claims that the *Hill* Court found "that historical cell site science is

19   'well understood, 'can show with sufficient reliability that a phone was in a general area' and

20   'the technique has been subjected to publican and peer criticism, if not peer review'".  The

21   problem with this citation, however, is that the portion of the opinion cited by the government is

22   simply the Court's description of the historical cell site analyst's testimony.

23   The *Hill* Court was actually critical of the agent's summary testimony in that case and

24   emphasized that the historical cell-site analysis testimony gatekeeping inquiry must be tied to the

25   facts of a particular case. *Id.* at 297. The bank robbery at issue in *Hill* is a far different case than

26   the alleged homicide here. Moreover, the issue on appeal was whether the district court abused

27   its discretion in admitting evidence at trial - a rather low bar - and not an expression that the

28

**REPLY TO UNITED STATES RESPONSE TO DEFENSE
LETTER REQUEST FOR CAST EXPERT DISCOVERY**

"science" of "cell site analysis" is valid.  In fact, the *Hill* Court cautioned: "Our concern is that the jury may overestimate the quality of the information provided by this analysis. We therefore caution the government not to present historical cell-site evidence without clearly indicating the level of precision - or imprecision - with which that particular evidence pinpoints a person's location at a given time." *Id.* at 299.  Thus, the government overstates the state of the law regarding cell site location information as being a well-established and accepted law enforcement tool.

Looking to past cases for guidance carries other problems.  Although radio frequency theory has remained constant over the years, cell phone technology has changed.  Currently, phone carriers are updating cell sites to handle 5G technology.  The current 4G technology started in late 2010.  In short, the evolution of cell phone technology outpaces past judicial opinions. Moreover, over the years, CAST has changed the way it represents the purported coverage area of a cell site.  Previously, CAST represented the purported coverage area of a cell site by use of a closed wedge, which was misleading because radio waves do not stay within the wedge.  More recently, CAST switched to a semi-closed wedge to demonstrate the purported coverage area of the cell site.  This matters because as is evident from Agent Sparano's supplemental disclosure, the wedge does not accurately display the distribution of radio waves from an antenna.

Furthermore, Agent Sparano's draft reports show that for towers with three sectors, each sector is the same size and has the same coverage area, with a horizontal beam width of 120 degrees. In the practice, each sector of a cell site is specifically engineered to cover a specific area.  Despite this, Agent Sparano portrays in her presentations that each antenna on a cell site is the same. That  attempt to shovel the realities of radio frequency theory into a wedge is simply wrong.  The supplemental disclosure from Agent Sparano shows that in practice, when field surveys are completed, radio waves are not confined to a wedge.  And although Agent Sparano discusses the government's ability to conduct a field survey to determine more precise location data of a cellular network, none was performed in this case. The government's failure to conduct

**REPLY TO UNITED STATES RESPONSE TO DEFENSE LETTER REQUEST FOR CAST EXPERT DISCOVERY**

1    a field survey is significant.  When the government conducts a field survey, they can use the

2    results to verify the mapping done with call detail records. The failure to do so here means that

3    the government has not verified Agent Sparano's results.

4         The defense has tried repeatedly to get information from the government regarding Agent

5    Sparano's training, which is the stated basis for her opinions.  These materials are not publicly

6    available. Without them, the defense cannot effectively cross-examine her to determine why she

7    reached her conclusions.  This is important because in the past, the FBI's failure to properly train

8    alleged forensic practitioners has lead to disastrous results. *See*

9    https://slate.com/news-and-politics/2015/04/fbis-flawed-forensics-expert-testimony-hair-analysis

10   -bite-marks-fingerprints-arson.html.

11        Finally, the defense is not aware of Agent Sparano's ultimate conclusions.  The

12   demonstrative exhibits from the government, Sparano I and II,  are simply that: a demonstrative

13   aid which she apparently calls a "presentation" as opposed to an "official report".   They do not

14   provide a summary of Agent Sparano's conclusions, or the basis thereof.[1]  The proposed changes

15   to Federal Rule of Criminal Procedure 16, though not in effect, are still illustrative.  The new

16   Rule, if enacted, provides that the government's disclosure "must contain…a complete statement

17   of all opinions that the government will elicit t from the witness in its case-in-chief, or during its

18   rebuttal to counter the testimony that the defendant has timely disclosed…."  Rule

19   16(a)(1)(G)(iii). And this statement must be in writing. The reason for the change, in part,

20   according to the Rule 16 Committee was the current version of the Rule uses the term

21   "summary."  The changes reflect that discovery disclosures should be complete and in writing.

22   Here, the government has complied with neither.  Although the changes remain pending, they are

23   ///

24   ///

25

26   _____

27   [1] The government's refusal to provide the underlying PowerPoint further complicates
     things.  The current version of the exhibit lacks movement and meaning.  At a minimum, we
     request the Court order the government to provide the actual PowerPoint presentation.

28

**REPLY TO UNITED STATES RESPONSE TO DEFENSE
LETTER REQUEST FOR CAST EXPERT DISCOVERY**
                                                -4-

1   at least aspirational, and ones this Court should order in this case.

2

3   Dated: December 11, 2020                    Respectfully submitted,

4

5                                               _____/s/_____
                                                ROBERT WAGGENER
6                                               Attorney for Defendant
                                                RUSSELL TAYLOR OTT
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY TO UNITED STATES RESPONSE TO DEFENSE
LETTER REQUEST FOR CAST EXPERT DISCOVERY**