ROBERT WAGGENER - SBN: 118450
LAW OFFICE OF ROBERT WAGGENER
214 Duboce Avenue
San Francisco, California 94103
Phone:      (415) 431-4500
Fax:        (415) 255-8631
E-Mail:     rwlaw@mindspring.com

MARCIA ANN MORRISSEY- SBN: 66921
LAW OFFICE OF MARCIA ANN MORRISSEY
11400 W. Olympic Blvd., STE 1500
LOS ANGELES, CA 90064
Phone:      (310) 399-3259
Fax:        (310) 392-9029
E-Mail:     morrisseyma@aol.com

Attorneys for Defendant RUSSELL OTT

JAMES S. THOMSON- SBN: 79658
Attorney and Counselor at Law
732 Addison Street, Suite A
Berkeley, California 94710
Phone:      (510) 525-9123
Fax:        (510) 525-9124
E-Mail:     james@ycbtal.net

Attorney for Defendant DAVID SALVATORE DIAZ, III

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | No. CR-17-0533 EMC |
| Plaintiff, | SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF FBI ABOUT CELL PHONE COMMUNICATIONS AND LOCATIONS BASED ON HISTORICAL CELL CALL DETAIL RECORDS AND PROPRIETARY MAPPING SOFTWARE; MOTION FOR EVIDENTIARY HEARING |
| v. | |
| RUSSELL TAYLOR OTT, et al | |
| Defendants. | |
| | Date: March 3, 2021<br>Time: 9:00 A.M.<br>Dept: The Honorable Edward M. Chen<br>          District Court Judge |

1  TO: THE UNITED STATES ATTORNEY FOR THE NORTHERN
       DISTRICT OF CALIFORNIA; ASSISTANT UNITED STATES
2      ATTORNEYS KEVIN BARRY, AJAY KRISHNAMURTHY, LENA
       PENG; AND TO THE CLERK OF THE ABOVE-ENTITLED COURT:

## INTRODUCTION

This pleading by defendants Ott and Diaz supplements the pleadings filed by defendant Wendt regarding a *Daubert* hearing as to the government's proposed expert testimony of FBI Special Agent Meredith Sparano as to CAST evidence in this case. [Dkt. Nos. 1444-1445]. The Wendt pleading is a comprehensive pleading. Here, defendants Ott and Diaz focus on one aspect of the proposed CAST analysis and testimony - cell tower/antenna information used as part of the CAST analysis - and stress the point of why an evidentiary hearing is necessary as to the Court's gatekeeper function as to the offered testimony.

The Court expressed a view at the recent January 13, 2021 hearing that CAST analysis and Cell Site Location Information (CSLI) is not "rocket science" and is a relatively simplistic matter of inputting component data - call detail records and cell tower information - into a mapping software program. The Court emphasized that such a process could potentially be replicated by a defense expert as to the results of such data input. The government favors the argument that generating CAST opinion testimony is merely a matter of "popping numbers into a program".

Here, the defense challenges the perceived simplicity of the CAST process and resulting conclusions, particularly with respect to historical cell tower data, and how the subjective methodology in utilizing or not using objective components of the data can affect the reliability of the depictions, opinions, and conclusions as to that process. Radio frequency theory is the foundational science of the CAST process, and the offered reports and testimony of Special Agent Sparano unreliably distort conclusions that purportedly can be made from the underlying science. The Wendt brief addresses these general issues in argument 7 of its brief (pages 28-37), but this supplemental memo is intended to drill down further, and explain why a *Daubert* hearing is necessary to assess basic gatekeeping issues.

## CAST ANALYSIS CELL TOWER DATA

In this case, the numbers "popped" into the ESPA mapping program consisted of two components, the CDRs and cell tower records for the towers referenced in the CDRs. As to the Sparano I CAST report, all of the cell phone numbers happened to be subscribed to AT&T, and all of the cell tower information correspondingly came from AT&T. As set out in her August 14, 2020 disclosure, Special Agent Sparano first "obtained the tower list from the cell phone provider for the relevant time period", and her analysis consisted of importing the tower information into the mapping program along with the set of CDRs, which then allowed her to generate a report consisting of a "visual depiction of the tower locations accessed by each target phone number during relevant times to the crime." (Disclosure, paragraph 13)

Emphasized in the Wendt brief, and repeated here, is that this "analysis" took place at least four years after the suspected criminal conduct. Special Agent Sparano states that she obtained the tower <u>list</u> from the cell phone provider for the relevant time period (mid-July 2014), but she does not identify the specific data that she received as to that list of towers. In other words, it is not at all clear that Agent Sparano obtained the relevant data as to the operating capability and equipment status of each particular tower in mid-July 2014.

To understand the significance of the cell tower data, one has to understand the full complement of data that a carrier, in this case AT&T, provides when it produces cell tower information. The latitude and longitude physical location information of the particular tower are easy enough to understand, but in addition, for a particular moment in time regarding a cell tower, AT&T will provide information about each antenna, including height and direction of the antenna, the generation of the hardware, and beam width. Each of these additional pieces of information can make a difference as to the "analysis" and the resulting visual "opinion" depictions. As one would expect, over time and with emerging technologies, cell towers have

maintenance issues and can be modified or improved for a carrier to maintain current standards and compete with other carriers. The state of the capacities and components of the cell tower at the actual time of the incident being investigated is what is important, and Agent Sparano has not provided the specific details of the records she "popped" into the mapping system in 2018.

As to the input of the cell tower information for the analysis it is also important what portions of the cell tower data are part of the input, and what, if any, portions of the available objective data are left out of the process. For instance, as discussed below, Special Agent Sparano did not use all objective and scientific significant data provided by AT&T, including the height of the tower housing the antenna. All of this inputted information can affect the approximations of a cell tower's coverage area, and such approximations are handicapped where, as in this case, there is no drive testing information.

Why this data is so important is featured in the Wendt brief, and in particular, the reference to Aaron Blank's article "The Limitations and Admissibility of Using Historical Cellular Site Data to Track the Location of a Cellular Phone", 18 RICH. J.L. & TECH. 3 (2011) (Exhibit B to Wendt brief) Blank explains the multiple technical issues that may affect which cell sites are involved in the transmission of cell phone radio waves - either reception or transmission: "First, the technical characteristics of cell sites may affect signal strength: (1) the number of sites available; (2) maintenance or repairs being performed; (3) height of the cell tower; (4) height above sea level; (5) wattage output; and (6) range of coverage. Second, technical characteristics of the antennas on cellular sites may affect signal strength, such as the number of antennas, the angle and direction the antenna is facing, height of each antenna, and call traffic process through each antenna. Third, technical characteristics of the phone, such as the wattage output and generation of the phone's broadband capability, may affect signal strength.  Fourth, signal strength may depend upon environmental and geographical factors,

including the weather, topography, and level of urban development. Finally, indoor or outdoor use of the phone may alter the strength of the signal." [Citations and footnotes omitted]

The defense and government agree on one thing: the study of how radio waves move from one antenna to another is science. What the parties disagree on is whether Agent Sparano understands or applied the appropriate scientific standards in this case; in other words, whether what she did is actually scientific and reliable.

Per Agent Sparano and the government, the applicability of radio frequency theory to cell site location information involves only needing to know two pieces of information: (1) the location of a cell site and (2) the direction it is pointing. And they say, this information is provided directly by the phone companies in the form of Call Detail Records. There are many reasons the Agent Sparano's opinions are incomplete, inconsistent with the science, and inconsistent with her own apparent reasoning. As such, a *Daubert* evidentiary hearing is needed.

First, even under a very rudimentary understanding of the use of radio wave propagation to determine the proximity of a receiving antenna, a scientist would consider the strength of the transmitting signal, the height of the tower, the angle of the antenna, and the geography of the area. Save for the height of the tower, which is discussed following, Agent Sparano does not possess or consider any of the above information.

These omissions matter because height, angle, and power are three of the most significant factors influencing radio wave propagation. The following example is illustrative. In this example, the antenna is attached to a mast that is 500 feet off the ground. The antenna is directed downward at an angle of 150 degrees:



The purpose of the tower may to be service people not in the immediate area of the tower. Even if Agent Sparano had access to the power of the signal and the angle of the tower, she would not take this information into account, because instead, she would stick with her standard pie shape wedge that she inserts for every individual cell tower. This approach is misleading because it implies that each individual tower services the area directly in front it, whereas it might service an area further away.

Second, Agent Sparano treats the height of all antennas the same, even though she has access to the actual height of the various towers. Even without knowing the angle or power, the height of the tower, which is a significant factor in radio wave propagation, is ignored by Agent Sparano in her analysis.

In other words, Agent Sparano both lacks all necessary objective data to conduct a scientific analysis and recklessly ignores significant objective data in reaching her opinions. But her opinions are also driven by subjective data that the government has yet to justify. For instance, the government has not explained why Agent Sparano treats each cell site has having a 120-degree beam width (the same pie-shaped wedge) and a coverage area of approximately

one mile. There is zero scientific basis to support the proposition that every cell site acts the same way.

Moreover, and more troubling, is that even though Agent Sparano knows the bandwidth of each antenna, (generally 60 degrees), she nonetheless treats each antenna as having a 120-degree angle. This decision is likewise neither explained nor justified. This is significant because Agent Sparano effectively increasing the size of a potential coverage area of a cell site.

In short, the use of radio waves to determine location is science, but Agent Sparano is not using science in her assessment. Instead, she has made a series of unsupported assumptions untethered to science and ignored data points that do not justify her opinions. Because the government cannot establish her testimony is reliable, a *Daubert* evidentiary hearing should be held, and ultimately her testimony should be excluded at a trial.

Respectfully submitted,

DATED: JANUARY 29, 2021    /s/
ROBERT WAGGENER
Attorney for Defendant Ott

DATED: JANUARY 29, 2021    /s/
MARCIA ANN MORRISSEY
Attorney for Defendant Ott

DATED: JANUARY 29, 2021    /s/
JAMES THOMSON
Attorney for Defendant Diaz